Haynes, J.
This is an action which, I think, counts entirely on fraud. It is set up that the plaintiff was about to purchase some stock in The Guyjas Gold Mining Company,and he applied to the defendant — who was then the president of that com- *55 party — to make some inquiries in regard to the mine. He inquired in regard to the title of the mine, and in regard to the indebtedness, and was informed by the president that there was no indebtedness on the mine; that he was the president, and that none would be allowed to accumulate, and remarked that they would only operate so far as they had means to operate — indeed he stated that they had no credit wherewith to get into debt — and he said they had abstracts which had been furnished by the attorneys in Tucson, Arizona,and that the title was good. • It developed subsequently that the company had taken a title bond.to certain claims in Arizona for which they were to pay, I think, $60,000. It had in fact paid about $15,000,and the balance remained unpaid,and a payment was falling due in July — this conversation having taken place in January — which payment in fact was never met, and the title of the company to the claims failed and was forfeited. Thereupon this suit was brought.
Now the plaintiff claims that there was fraud here. I think he claimed also — at least did in argument — that if the statements were not knowingly made falsely, they were made recklessly, and plaintiff asks for damages, punitive damages, attorneys fees and damages to the plaintiff’s feelings,and for his disgrace in the community for having been concerned in the buying of stock of this kind' which proved to be worthless; and he proceeded to offer testimony upon those points.
We are very frank to say that this is the first case that we have ever known in which a party in a case of this kind attempted to recover for his feelings, disappointment or disgrace in being induced to purchase stock of this kind. Upon the other questions perhaps there is more room for argument.
One of the first exceptions taken is to the certificate to a deposition — that the certificate is not made in accordance with the statutes of the United States governing certificates of that kind,and that appears to be true. We find no statute or decision in this state which would permit that deposition to be read,and we think the court was right in ruling it out.
There is another class of statements in the case to which *56 the plaintiff objects, which consists of these: for the purpose of showing that the plaintiff — Cable—had knowledge, or that one Bowman, who was claimed to be the agent of the plaintiff,had knowledge of the condition of the title and indebtedness of the company, they offered testimony showing that it was talked about in the city on the Produce Exchange and in the oil market and in the offices generally ;very fully indeed that it was the general topic of conversation that this company had an outstanding indebtedness of this kind for the purchase price of the mine,but no witness was able to testify that it was ever mentioned in the presence of Bowman or Cable. Cable testified that the first time that he knew it was at a certain meeting of the directors, where he was informed that there was an outstanding indebtedness. This class of evidence was permitted to be given. In regard to that we say that a majority of this court are not fully satisfied that some evidence of that kind might not be given, but at the same time they have very serious doubts in regard to its admissibility, and if parties on the trial of the case hereafter put the evidence in again, they will do it with knowledge that it is an open question. Speaking for myself, I think the testimony is entirely inadmissible, and never ought to have been received.
There was another item of testimony in .regard to the custom of putting these stocks upon the market, that it was known throughout the country that these claims were obtained by options upon them, and then that they were stocked up and that the stock was put upon the market to obtain money to open the mine. To this the same remarks apply which I made to the preceding evidence a moment ago. I do not myself see how such evidence could properly be re. ceived. The plaintiff inquired of this party, who was the president of the company, as to the true condition of the company in regard to title and debts, and the president undertook to answer in regard to this mine. Now what the custom may have been in regard to other companies, is a matter that I deem entirely irrelevant to the issues in this case.
There is another matter in which the error is serious,and that is this: Mr. Cable was present at a meeting of the directors on a certain occasion, and he was then told that the company owed for the mines perhaps $45,000,and that a pay *57 ment would be due in July; that the debt was outstanding and was serious, and had to be provided for. Now at that time it is said that he did not express his surprise, that he kept quiet. The plaintiff, when he came to the rebuttal, proposed to offer some reasons why he did not make a statement at that time, and this was excluded under the objection of defendants’ counsel and he was prevented from doing so, and the court is very clearly of the opinion that the testimony was competent,and that the plaintiff should have been permitted to give his reasons why .he did not make a statement. I, myself, doubt very much whether there was anything in the case which required him to make any statement whatever or say anything about it, but if he was required to do it, he should have been permitted to state the reasons why he did not do it.
There is another objection, and that is that Judge Austin testified that he gave an opinion upon the title to the officers of the company, I do not deem that very material in this case, and whether rightfully given or not, I do not think it should have had any influence against the plaintiff, for the reason that he stated to the officers that upon the abstracts, the parties who were proposing to deed the property to them had a good title. The difficulty in the whole case was that the defendants themselves had not yet obtained the title — the most that the company had put into these mines was the amount of $15,000, and that is all there was of it. He never in fsct gave an opinion that the company iself had a good title, but that they had an option,and upon making the payments stated, they would be entitled to have deeds to the lands.
There were some matters in the charge of the court also which I propose to call attention to.
The plaintiff requested that the jury should be given two propositions, numbered respectively two and six, and that they should be given before argument. No. 3 was as follows : *58 asked by any person regarding the title of the mines, or debts against them, to tell the truth about the matter if he undertook to give information concerning the same; and if the jury find that the defendant Noah Bowlus knew that the plaintiff was contemplating a purchase of stock in the company, and came to him and inquired about the company and the title to its mines, and if the said defendant knew, or under the circumstances had good reason to believe that the plaintiff was relying upon the representations of the defendant as to the title to the said mines and the debts of the company; and the jury further find that the defendant when asked by the plaintiff regarding the same did not truthfully state the knowledge he had concerning the mines and indebtedness, then the defendant was guilty of making false representations, and if the plaintiff was thereby misled, and without knowing the facts about the title of said mines or the indebtedness against the same, relied upon the statements and was thereby influenced to invest in the stock of the company, and suffered loss thereby,your verdict will be for the plaintiff. ”
*57 “3. If the jury find that Noah Bowlus was the president of the Guyjaa Gold Mining Company, and as such knew the real status of the title to the mines which were being operated by. the company, and further knew of the indebtedness outstanding against the mines, then it was his duty when
*58 The objection made was, that this matter did not follow the petition; that the petition was one charging fraud, and that this did not.bring the charge within the allegations of the petition, but that if he knew certain facts and failed to state them, he then was liable. We are not prepared to say, under that view of the case, that the court was wrong in its refusal to give that particular charge. It was not drawn with the care required of counsel in drawing a charge of that kind. If the case was a proper one,and the pleadings properly stated, it would perhaps be true, under the decisions in Ohio and at common law, that this person, being the president of the company and being inquired of by a person who Wanted to make an investment in the company, and inquired of in regard to the standing of the company,and he recklessly and carelessly made misstatements which misled the .other, that he would be liablejbut that was not the case charged. against the party — he was charged with having fraudulently and wilfully made the statements.
The sixth proposition is as follows:
“6. If the jury find for the plaintiff under the rules of law given by the court, then plaintiff is entitled to recover *59 damages, both compensatory and punitive. Compensatory damages are allowed to compensate the plaintiff for the act? ual loss he has sustained. In this case compensatory dam* ages would include the full money loss sustained by plaintiff by reason of his purchase of stock in the company, together with reasonable attorney’s fees to the plaintiff for the services of attorneys in the prosecation of this case. Puni? tive damages are given as smart money in the way of pecuniary punishment. If you find for the plaintiff,you will add to the compensatory damages such sum by the way of pun? itive damages as in your judgment you may think just and proper in view of all the evidence and circumstances.”
He was asked that even on the state of facts set forth on the former requests, if the jury'find them to be established, or if they find at all for the plaintiff, that they may add to these compensatory damages punitive damages. It is pretty difficult for the court to believe that the plaintiff has made out here a case for punitive damages in any form. The matter seems to have been dwelt upon and placed before the jury until it looks very much as if the jury had returned and rendered a verdict in favor of the defendant be? cause the plaintiff had asked too much; but, be that as it may,we think, the charge, in that form, is not right.
It is true that in Roberts v. Mason, 10 Ohio St., 278, they use the word “fraud”, but so far as we can discover, the case must be such' as that it was either gross or mali? cious fraud, or something showing a very corrupt condition of affairs. I have never even heard of a bare case of fraud where it was claimed that for fraud alone the party was entitled to punitive damages. The cases cited to us are where there was a malicious attack upon a party, and the defend? ant had been indicted for maliciously attacking persons with intent to kill and had been convicted by the jury, and in that case they would allow punitive damages. So in a case in 27 Ohio St,,to which we are cited,where a clergyman was maliciously and wilfully charged by a woman very falsely and under very aggravating circumstances with a mat? ter that was actionable of itself, and they there allowed compensatory damages and with them included attorney’s fees —punitive damages; but we are not disposed to hold that the court erred in its refusal to give this charge,in the form *60 in which it was asked. Perhaps a charge might be framed which would state various phases of this case which would be entitled to go to the jury.
Hurd, Brumback & Thatcher, for Plaintiff in Error.
D. B, Austin and Gilbert Harmon, for Defendant in Error.
It is contended very stoutly on behalf of the defendant that he understood, when the party inquired in regard to the indebtedness, that it was with regard to the general floating indebtedness of the running of the institution, and he claims very strongly that he stated correctly as he understood it to be the condition of the title to the land.
The judgment will be reversed and the cause remanded for a new trial.
A charge was given the jury, I think numbered three in the defendant’s requests, in reference to the duty of Bowman if certain rumors of suspicious circumstances came to him, to make further investigation. This states the law too strongly against the plaintiff upon the evidence in the case; also in the fourth request as to the same point.
The judgment will be reversed and the cause remanded for a new trial.